UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Edward A. Koller and Judith Koller, *Plaintiffs*, <br><br> v. <br><br> Timothy Hilderbrand, Dennis Gallego, Gary Hoffkins, and Roger Wachinicki, *Defendants*. | Civil No. 3:09cv999 (JBA) <br><br><br> March 19, 2013 |

RULING ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs Judith and Edward Koller—mother and son—sue police officers Timothy Hilderbrand, Dennis Gallego, Gary Hoffkins, and Roger Wachinicki, for their involvement in a search of the Kollers' home that was conducted on May 15, 2007 pursuant to a valid search warrant. Plaintiffs claim that Defendants unreasonably destroyed Plaintiffs' property or failed to intervene as their fellow officers unreasonably destroyed their property during the course of the search. Officer Gallego, a criminal investigator for the Westchester County District Attorney ("Westchester DA"), moves [Doc. # 87] for summary judgment.  Detectives Hilderbrand, Hoffkins, and Wachinicki, who are members of the Greenwich Police Department, file [Doc. # 91] a separate motion for summary judgment. For the reasons that follow, Officer Gallego's motion will be granted, and the Greenwich Defendants' motion will be granted in part and denied in part.

I.      Factual Background

The following facts are culled from the Defendants' Local Rule 56(a)(1) Statements [Docs. # 89, 91-5], Plaintiffs' Local Rule 56(a)(2) Statements [Docs. # 93, 94], and all accompanying affidavits, declarations, and exhibits. *See* Fed. R. Civ. P. 56(c)(1)(A).  The core of the parties' dispute arises out of the May 15, 2007 search of

Plaintiffs' home in Greenwich, Connecticut, a one family ranch-style house, with a finished basement and a detached garage. (Gallego's Loc. R. 56(a)(1) Stmt [Doc. # 89] ¶ 17.) Unless noted specifically by footnote, the following facts are undisputed.

A.   The Warrant

The search, which took place in connection with a criminal investigation into an organized crime and gambling operation in Westchester County, New York, was conducted by law enforcement officers from the Westchester DA and the Harrison Police Department (collectively, the "Westchester officers"), as well as agents from the Drug Enforcement Agency ("DEA"). (*Id.* ¶ 9.)  Investigators had probable cause to search Mr. Koller's residence for evidence of the gambling operation. (*Id.* ¶ 10.) As Mr. Koller's residence is located in Greenwich, Connecticut, a DEA agent contacted Detective Hilderbrand, of the Greenwich police department, to request assistance in obtaining the warrant. (*Id.* ¶ 11.) Detective Hilderbrand prepared the warrant application with a supporting affidavit by Investigator Gallego. (*Id.* ¶ 12.)

On May 15, 2007, Connecticut Superior Court Judge William Hickey signed a search and seizure warrant for the Koller residence, which authorized the seizure of the following evidence:

> Any gambling apparatus, documents, any personal digital assistants, telephones, answering machines, cellular telephones, Simcards and cellular telephone chargers, and any and all cellular telephone billing/contract records, money wagered on illegal gambling, any and all cash, credit card bills, records of bets, records of monetary gambling balances, tabulations, handwritten notes, images or other documentation concerning gambling records and/or communications about gambling, ledger books and any record of payment to or from any bettor and sheet-holder, receipts for betting tickets including any computer generated betting ticket, any and all records reflecting the names, code numbers, telephone numbers and addresses of players (bettors), sheet holders (agents), runners, pickup men, bookmakers, comptrollers, master agents, Internet gambling websites and

their employees. Any and all computers and thumb drives, floppy discs, compact discs and DVDS, containing any material related to gambling records. Any and all financial records which reflect the acquisition, possession, disbursement, distribution or location of proceeds of illegal gambling activity, any and all safe deposit keys or records of ownership or location of safe deposit boxes or private storage facilities, any and all safes and their contents, any and all personalty or other items evidencing ownership or connection to the subject premises or vehicles and or gambling proceeds or records, [] any and all photographs and videos depicting any two or more aforesaid individuals of the Green/Giovanniello illegal gambling enterprise together, and any contraband including trace evidence and paper shredders.

(*Id.* ¶¶ 13, 14.)

B.    The Search

The search was conducted on May 15, 2007, the same day that the warrant was issued. (*Id.* ¶ 8.)  Law enforcement officers from the Greenwich Police Department, the Westchester DA's Office, the Harrison Police Department, and the DEA were present during the search.[1] (*Id.* ¶ 15.)  The search began with the Greenwich officers conducting a security sweep.[2] (Defs.' Loc. R. 56(a)(1) Stmt [Doc. # 91-5] ¶ 17.)  Once the residence was secured, the Westchester officers assumed the primary responsibility of searching, as they were the officers familiar with the nature and details of the ongoing criminal investigation

_____

[1]  Specifically, the following law enforcement officials were present at the residence at various points: two DEA agents; three Westchester officers, including Defendant Gallego; ten Greenwich police officers, including Defendants Hilderbrand, Hoffkins, and Wachnicki; and six members of the Harrison Police Department. (Defs.' Loc. R. 56(a)(1) Stmt [Doc. # 91-5] ¶ 12.)

[2]  The parties dispute whether the police entered the home without force, even though this fact is not material to the substantive claims in Plaintiffs' amended complaint, which are limited to claims of property damage. (*See* Am. Compl. [Doc. # 16] ¶¶ 1–10.) Even though this disagreement is ultimately immaterial, the Court notes that although Plaintiffs deny that police officers entered without force, their citation to the record does not support this denial. (*See* Edward Koller Dep. at 24 (stating that the police "said get on the floor, so I got on the floor" and acknowledging that no one pushed him).)

3

in Westchester County. (*Id.* ¶ 18.)[3]   Because of their knowledge of the gambling investigation, officers from the Harrison Police Department were the ones who physically conducted the manual search and identified items for seizure. (*Id.* ¶ 20.)[4]

Plaintiffs assert an array of property damage claims. Although the Court will discuss their itemized claims of property damage only as necessary in its discussion below, one item bears mentioning here: the safe. A large safe was located in the basement of the Koller residence (*Id.* ¶ 30.), and, as the warrant authorized the search and seizure of "any and all safes and their contents," the police sought access to it (Gallego's 56(a)(1) Stmt ¶ 14.). While Judith Koller had the combination to the safe, she was not present at the home during the search because her children told her to stay away while the search was ongoing.  (Defs.' 56(a)(1) Stmt ¶¶ 31-32.) As such, when the officers were unable to gain access, the Greenwich Police Department contacted Champion Locksmith, which was able to breach the lock by using a precision drill. (Defs.' Local Rule 56(a)(1) Statement ¶¶ 33, 34.)

---

[3]  Plaintiffs did not append the portion of the deposition that they claim creates a factual dispute regarding Defendants' paragraph 18. However, the Court found the relevant page in  Defendants' submissions and observes that it does not create a material question of fact. (*See* Edward Koller Dep. at 64 ("You know, *as I was informed by my attorney*, like Greenwich was the ones that were searching and seizing everything. New York was the one that was there, *from what I was told*, like telling them what to do, but because it was in a different state, they couldn't touch." (emphasis added)).) This statement derives from Mr. Koller's counsel, and not from an independent basis in fact. If counsel's opinion had a basis in fact, then Plaintiff should have included the source in the record. Defendants' paragraph 18 is deemed admitted.

[4]  Plaintiffs deny that the Harrison police officers were responsible for manually searching the premises, citing the same portion of the record that they cited in response to paragraph 18. For the same reasons discussed in footnote 3, paragraph 20 is deemed admitted.

In total, the search lasted five hours and eighteen minutes, beginning at 5:22pm and ending at 10:40pm. (*Id.* ¶ 18.) Mr. Koller did not observe any officers conducting the search or damaging property. (*Id.* ¶ 26.)  Nor did Edward Koller hear an officer giving instructions to damage or destroy property.  (*Id.* ¶ 27.) Similarly, Judith Koller, who was away from the premises throughout the duration of the search, did not observe any officer damaging property. (Defs.' 56(a)(1) Stmt ¶ 71.) There is a genuine dispute about the pre search state of the rooms in the Koller residence (*compare* Marino Aff. ¶ 9 (noting that certain rooms were untidy), *with* Edward Koller Dep. at 35 (a cleaner serviced the house twice per week)), as well as the state of disrepair after the search (*compare* Marino Aff. ¶ 10 (observing no damage and remarking that the search was ordinary), *with* Edward Koller Dep. at 31 (after search the house was "upside down")).

After the search, Plaintiffs did not file a civilian complaint of any kind with the Greenwich Police Department. (Defs.' 56(a)(1) Stmt ¶¶ 72, 74.) On May 31, 2007, pursuant to a court order, the Greenwich police turned over evidence obtained from the Koller residence to Westchester agents, including a passport, cell phone, and a gun. (*Id.* ¶¶ 76, 77.)

In 2009, Plaintiffs brought suit against Defendants in their individual capacities, claiming "substantial, unreasonable, and unnecessary damage" was done to their personal property and residence during the search. (Am. Compl. ¶¶ 4, 8.)

### C.   Defendants' Involvement

#### 1.   *Investigator Gallego*

Gallego was not one of the officers who conducted the search of the home. (Gallego's 56(a)(1) Stmt ¶ 28.) While other officers searched the residence, Investigator

Gallego was with Mr. Koller, with a few exceptions. (*Id.* ¶ 25.) First, after hearing a noise upstairs, Mr. Koller asked Gallego to go check what was happening, and Gallego avers that, when he was upstairs, he did not damage any property nor observe property being damaged, only officers moving objects around in order to search behind or underneath them. (*Id.* ¶ 30; Gallego Decl. [Doc. # 90] ¶ 10.)[5] Second, Gallego left Mr. Koller's presence to get some air outside and allow a different officer to question Mr. Koller, and Gallego avers that, while outside, he did not damage or observe any officer damaging the Kollers' property. (Gallego's 56(a)(1) Stmt ¶ 31; Gallego Decl. ¶ 11.)[6] Gallego also left Mr. Koller's presence to walk downstairs when the police were attempting to open the safe. (Gallego's 56(a)(1) Stmt ¶ 32.) Gallego has no knowledge that the Kollers' property was unreasonably or maliciously damaged or destroyed. (*Id.* ¶ 33.) Plaintiffs assert that there was a fourth occasion: when Investigator Gallego left the residence with Mr. Koller's car keys to search his car (*See* Pls.' Loc. R. 56(a)(2) Stmt [Doc. # 93] ¶ B.44; Edward Koller Dep. at 191.)

### 2.   *Detective Hilderbrand*

On May 15, 2007, Gallego and a DEA agent contacted Detective Hilderbrand for help in obtaining and executing the search warrant of the Koller residence. (Defs.' 56(a)(1) Stmt ¶¶ 2, 3.) Detective Hilderbrand prepared and submitted the search and seizure application that served as the basis for the warrant. (*Id.* ¶ 4.) Detective

---

[5] Here, too, Plaintiffs deny paragraph 30 without support in the record. Paragraph 30 is deemed admitted.

[6] Plaintiffs' denial regarding paragraph 31 is also deficient because the cited portions of Edward Koller's deposition are insufficient to create a genuine dispute about what Gallego did or saw when he briefly exited the residence. Paragraph 31 is therefore deemed admitted.

Hilderbrand's role was to coordinate the warrant and its execution, and he did not supervise the execution of the search warrant. (*Id.* ¶¶ 25, 26.)[7]   Hilderbrand asserts that he did not manually search the premises or identify items for seizure. (*See* Hilderbrand Aff. ¶ 16.)  For much of the search, Detective Hilderbrand remained outside the home, entering on various occasions to inquire whether the search team needed any assistance. (*Id.* ¶¶ 28, 29.)[8]  Detective Hilderbrand was in the basement when the locksmith was contacted to gain access to the safe. (*Id.* ¶ 29.)

After the search was complete and in accordance with standard practice, Detective Hilderbrand prepared the police report because he was the officer initially contacted by Investigator Gallego. (*Id.* ¶ 49.)  Lieutenant Marino reviewed the report and determined that it was accurate. (*Id.* ¶ 50.)

### 3.      *Detective Hoffkins*

During the search, Detective Hoffkins's role was to assist by photographing any evidence identified for seizure, as well as some of the rooms in the home (*Id.* ¶ 36). At no point did Detective Hoffkins manually search the premises or identify items for seizure; rather, he stood by, out of the way, as Westchester officers conducted the search, until an item was found for seizure. (*Id.* ¶ 37, 38.)[9]

---

[7]  Plaintiffs deny that Detective Hilderbrand did not supervise the search, but their citation to Exhibit B of Detective Hilderbrand's affidavit does not adequately support this denial.  Paragraph 26 is therefore deemed admitted.

[8]   Because Plaintiffs cite no evidence for their denial of paragraphs 28 and 29, they are admitted.

[9]  Plaintiffs offer no evidence to support their denial of paragraphs 37 and 38, which are therefore deemed admitted.

### 4.   *Detective Wachnicki*

Detective Wachnicki, also a member of the Greenwich police force, had a limited role during the search: he was responsible for documenting the items located and identified for seizure by the Westchester officers. (*Id.* ¶ 39, 41.)[10] Detective Wachnicki did not manually search the premises, his only role being to document the items identified by other officers for seizure. (*Id.* ¶ 42.)[11]

## II.   Discussion[12]

Plaintiffs claim that Defendants are liable for inflicting unreasonable property damage during the course of the May 2007 search. Defendants, though moving separately, raise essentially the same arguments: (1) even assuming that the Plaintiffs' property was unconstitutionally damaged during the search, Defendants are not liable under § 1983 because they did not personally cause the property damage and did not observe their fellow officers inflicting the damage, and (2) Defendants are entitled to qualified immunity. The Greenwich Defendants also argue that no genuine dispute exists that the damage to Plaintiffs' property was constitutionally permissible. The Court starts

---

[10]  Plaintiffs label paragraph 40 "irrelevant" but offer no evidence to support a denial. Paragraph 40 is deemed admitted.

[11]  Plaintiffs having cited no evidence in support of their denial, paragraph 42 is deemed admitted.

[12]  "Summary judgment is appropriate where, construing all evidence in the light most favorable to the non-moving party," *Pabon v. Wright*, 459 F.3d 241, 247 (2d Cir. 2006), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

with this final argument, before addressing Defendants' claims that they lacked personal involvement and are entitled qualified immunity.

> A.      Fourth Amendment Violation

The Greenwich Defendants argue that "there is no competent evidence to substantiate a violation of the Fourth Amendment in this case as a matter of law. (Defs.' Mem. Supp. [Doc. # 88] at 23.) Where, as here, a search is conducted pursuant to a valid warrant, the search is subject to judicial scrutiny "to ensure reasonableness in the manner and scope of searches and seizures that are carried out." *Ayeni v. Mottola*, 35 F.3d 680, 684 (2d Cir. 1994), *abrogated on other grounds by Wilson v. Layne*, 526 U.S. 603 (1999); *accord United States v. Ramirez*, 523 U.S. 65, 71 (1998) ("Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression.").

 In *Cody v. Mello*, the Second Circuit articulated the standard of liability "for property damage occurring in a lawful search," holding that a plaintiff must establish "that the police acted unreasonably or maliciously in bringing about the damage" and that "[m]ere negligence is not enough." 59 F.3d 13, 16 (2d Cir. 1995) (citing *Daniels v. Williams*, 474 U.S. 327, 333–34 (1986). Although *Cody* dealt with a due process claim, district courts in the Circuit have interpreted *Cody* as articulating the standard for Fourth Amendment violations as well. *See Dockery v. Tucker*, No. 97-cv-3584 (ARR) (RLM), 2008 WL 2673307, at *10 n.8 (E.D.N.Y. June 26, 2008) (citing post *Cody* cases).

Some property damage caused during a lawful search is not *per se* unreasonable within the meaning of the Fourth Amendment; rather, the Supreme Court has recognized that "officers executing search warrants on occasion must damage property in order to

perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979). The reasonableness of the damage must be evaluated with reference to the target of the search. *See* Dockery, 2008 WL 2673307, at *10 ("[C]onsidering the agents' reasonable belief that [the arrestee] was at the Premises on the day of the 1995 search, coupled with their inability to locate him once inside the house, the court finds that the damage . . . to ceilings, floors and locked doors was well within the bounds of a constitutionally permissible effort to locate [the arrestee's] potential hiding place."). Even "some disarray in conducting a search, including the tangential destruction of items that could not contain the object of the search" does not necessarily constitute a Fourth Amendment violation. *Id.*; (*see also* Pls.' Opp'n [Doc. # 95] at 12 (acknowledging that "sometimes destruction of property is an inevitable concomitant of a properly executed search").)

Applying the *Cody* standard to motions for summary judgment, courts in the District have been reluctant to resolve the issue at summary judgment. *See Notice v. Koshes*, 386 F. Supp. 2d 23, 27 (D. Conn. 2005)  ("Whether the police officers' actions were unreasonable or malicious is a question of fact that cannot be resolved on a motion for summary judgment."); *Ochoa v. City of West Haven*, No. 3:08cv00024 (DJS), 2011 WL 3267705, at *6 (D. Conn. July 29, 2011) (holding that the defendant officers were not entitled to summary judgment) (citing *Koshes*, 386 F. Supp. 2d 23); *accord Diaz v. City of New York*, No. 00-CV-2944, 2006 WL 3833164, at *6 (E.D.N.Y. Dec. 29, 2006) (finding that while most photographs showed "damage consistent . . . with a reasonable search for narcotics," three photographs were less clear and therefore raised a genuine issue of material fact). *But see Dockery v. Tucker*, No. 97-CV-3584, 2008 WL 2673307, at *10 (E.D.N.Y. June 26, 2008) (holding that even if policemen personally caused the damage, they were entitled to summary judgment because there was no material dispute that the

property damage did not go beyond what was necessary to effectuate the search); *Brown v. City of Utica*, 854 F. Supp. 2d 255, 263 (N.D.N.Y. 2012) ("[N]o rational trier of fact could conclude [from photographs] . . . that defendants acted unreasonably or maliciously when executing the search warrant . . . .").

In support of their assertion that the record cannot support a finding of a Fourth Amendment violation, Defendants make a number of arguments, none of which the Court finds convincing. First, Defendants,  citing *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 475 (S.D.N.Y. 2003), argue that Plaintiffs failed to proffer at least "some competent evidence" of a Fourth Amendment violation to survive a motion for summary judgment,. (*See* Defs.' Mem. Supp. at 26.)  In *Rossi*, the court concluded that the plaintiff's testimony was "so replete with inconsistencies and improbabilities that a reasonable jury could not find that excessive force was used against him." *Rossi*, 275 F. Supp. 2d at 475.  The court explained that there is an exception to the axiom that courts should not assess credibility on summary judgment "when evidence is so contradictory and fanciful that it cannot be believed by a reasonable person." *Id.* at 476–77 (citing *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998), *aff'd*, 205 F.3d 1324 (2d Cir. 2000)). Here, while the record fosters significant doubts about the scope of property damage claimed—particularly in light of the absence of photographic evidence as to the Sony TV, the Bose radio, the bathtub, the couches, the Winnebago, and the Mercedes Benz CL500 (*see* App'x 1 to Defs.' Mem. Supp.)—Mr. Koller's deposition testimony is not so inconsistent as to permit the Court to disregard it as a matter of law. For example, Mr. Koller asserts that, *inter alia*, the following occurred during the search: his television screen was cracked (Edward Koller Dep. at 133), that the legs of a desk were ripped off

(*id.* at 128), the plug was ripped out of his Bose alarm clock (*id.* at 136–37), and air conditioners were broken (*id.* at 173).

Second, the Greenwich officers argue that the record establishes that the police took due care in searching the premises and that any damage was a reasonable consequence of a lawful search. (*See* Defs.' Mem. Supp. at 25–28.) However, establishing as a matter of law that property damaged in the course of a search was the result of reasonable and nonmalicious police action presents a difficult task at the summary judgment stage. *See Koshes*, 386 F. Supp. 2d at 27; *Ochoa*, 2011 WL 3267705, at *6. The Greenwich Defendants convincingly argue—and the Court hereby finds as a matter of law—that the damage to the safe and the basement floor was reasonable under the Fourth Amendment, in light of (a) the express authorization in the warrant to recover any safe and its contents, (b) the fact that Mr. Koller told his mother, who knew the combination, to stay away from the residence, and (c) the fact that the police enlisted the help of a professional locksmith after Plaintiffs failed to cooperate. *See Dockery*, 2008 WL 2673307, at *10. However, for the Court to grant summary judgment on this ground, it would have to conclude that *all* of the claimed property damage was reasonable as a matter of law, and Plaintiffs claim numerous items of property damage that, in aggregate, raise a genuine factual question about whether, under *Cody*, the police conducting the search acted reasonably and without malice.

Finally, Defendants argue that if "there was damage to property, Plaintiffs could have filed a complaint" with the Greenwich Police Department. (Defs.' Mem. Supp. at 29.) The fact that Plaintiffs chose not to utilize the civilian complaint procedure does not allow the Court to decide at this stage that the claimed property damage was not of constitutional significance.

B.      Section 1983: Personal Involvement

Both Investigator Gallego and the Greenwich Defendants argue that they are entitled to summary judgment because they did not have the requisite personal involvement in the property damage. (*See* Defs.' Mem. Supp. at 31, 35; Gallego's Mem. Supp. at 27, 30.)

It is well established that the personal involvement of a defendant–police officer is an essential prerequisite to money damages under 42 U.S.C. § 1983. *See, e.g., Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Oliphant v. Villano*, No. 3:09cv862 (JBA), 2010 WL 537749, at *9 (D. Conn. Feb. 11, 2010).  Here, the only plausible theories of personal involvement are (1) that Defendants directly caused unreasonable property damage or (2) that Defendants failed to intervene to prevent the constitutional violations of their fellow officers, as it "is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). However, failure to intercede liability will not attach unless there was "a realistic opportunity to intervene to prevent the harm from occurring." *Id.*

1.      *Gallego*

Plaintiffs assert that Investigator Gallego has the requisite personal involvement under § 1983 because he supervised the search, personally searched Mr. Koller's car, and observed other officers inflicting unreasonable property damage. (Pls.' Opp'n at 7.) Plaintiffs support these assertions with various citations to Mr. Koller's deposition testimony.  (*See id.*)  The cited evidence, however, does not create a genuine dispute of fact, and Investigator Gallego is thus entitled to summary judgment.

First, the Court finds at a matter of law that Investigator Gallego was not in charge of the search.  Gallego and the rest of the Westchester police were under the supervision and authority of Westchester DA Investigator Mike Occhicone. (*See* Gallego Reply Decl. [Doc. # 104] ¶ 7.) Astonishingly and in the face of contrary evidence, Plaintiffs contend that Gallego supervised the search. This assertion is patently unsupported by the record and, in fact, is contradicted by the very portion of deposition testimony cited by Plaintiffs. (*See* Pls.' Opp'n at 7; Edward Koller Dep. at 43 ("I also observed other police officers coming into my kitchen, holding stuff asking *that guy Mike*, should we bag and tag this or whatever they say . . . .").)  Plaintiffs' counsel does himself, his clients, and the Court a disservice by misrepresenting the record.

Second, there is insufficient evidence in the record to permit a reasonable juror to find that Investigator Gallego either personally searched the premises or had an opportunity to intervene to prevent fellow officers from inflicting unreasonable property damage.  To begin with, the Court has found that any damage inflicted in the course of opening the safe was reasonable as a matter of law, so any time spent by Investigator Gallego in the basement is immaterial. Furthermore, Edward Koller's testimony that Investigator Gallego left the Koller residence with his car keys (*see* Edward Koller Dep. at 191) does not create a genuine factual question about whether Gallego searched or observed other officers damaging Mr. Koller's car. Investigator Gallego has put forth evidence indicating that he did not search Mr. Koller's car, that he did not instruct anyone to search the car, that he did not see anyone search the car, and that he has no knowledge that the car was actually damaged. (*See* Gallego Reply Decl. ¶¶ 3–5.) Far from establishing a genuine dispute about the veracity of Gallego's assertions, Mr. Koller admits that he does not know whether Gallego searched his car. (*See* Edward Koller Dep.

at 28.)  Similarly, Edward Koller's testimony that, at one point, Gallego went upstairs to see what was responsible for a noise (*see* Edward Koller Dep. at 38) does not create a genuine dispute about whether he had the opportunity to intercede as other officers inflicted unconstitutional property damage in the upstairs rooms. Gallego avers that he did not see any unconstitutional property damage being inflicted (*see* Gallego Decl. ¶¶ 9, 13; Gallego Reply Decl. ¶¶ 2, 7), and Mr. Koller testified that "[w]hen we were sitting in the kitchen there [were] times that [Investigator Gallego] did leave and I don't know what he could have done. I don't know. I wish I did. I would be lying if I told you that I knew he did something. I don't know." (Edward Koller Dep. at 28.) Inasmuch as Plaintiffs "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and in light of Investigator Gallego's averments, the absence of contrary evidence, and the large number of other officers present during the search (*see* Defs.' 56(a)(1) Stmt ¶ 12), no reasonable juror could find that Investigator Gallego had the requisite personal involvement to be liable under § 1983.  Investigator Gallego's motion for summary judgment is therefore granted.

### 2.    *Greenwich Defendants*

 Defendants argue that, on the basis of the record before the Court, no reasonable juror could conclude that Detectives Hilderbrand, Hoffkins, and Wachnicki personally searched the premises or that they observed other officers inflicting unreasonable property damage during the course of the search. The Court agrees with the first point but not the latter, at least with respect to Detectives Hoffkins and Wachnicki.

Plaintiffs have offered no direct evidence that any of the three Defendants manually searched the premises. (*See* Edward Koller Dep. at 56, 69–70 ("I didn't get to see

or hear any of the other officers that were in my house because they kept me away from everybody and that is it. I wish I did. I wish I had a camera or heard things. I didn't.").) This lack of affirmative evidence—combined with evidence indicating (a) that the Westchester officers led the search because of their familiarity with the underlying gambling investigation (*see* Defs.' 56(a)(1) Stmt ¶ 18) and (b) that Detectives Hilderbrand, Hoffkins, and Wachnicki aver that they did not manually search the premises (*see id.* ¶¶ 16, 37, 42)—suffices for the Court to conclude that no reasonable juror could find that the Greenwich Defendants personally searched the premises.

Similarly, there is no genuine dispute that Detective Hilderbrand had no opportunity to intervene to stop other officers from violating the Fourth Amendment. First, then Lieutenant Marino was in command at the scene, and Detective Hilderbrand did not supervise the execution of the warrant. (*See id.* ¶¶ 14, 26.) Second, for much of the search Detective Hilderbrand was not present while other officers searched the home; he only entered the residence at certain points to ask whether the search team needed any assistance. (*See id.* ¶¶ 28–29.) Although Detective Hilderbrand was present in the basement when the locksmith was contacted to gain entry to the safe (*see id.*), this fact is of no import because the damage inflicted to obtain entry to the safe was constitutionally reasonable.[13] Plaintiffs offer no direct evidence that Detective Hilderbrand saw other officers unreasonably destroying property, and Detective Hilderbrand avers that no officers inflicted unreasonable damage in his presence and that he had no reason to know

---

[13]  At oral argument, Plaintiffs' counsel asked the Court to take judicial notice of another case involving Judith Koller and Detectives Hilderbrand and Hoffkins. *See Koller v. Wachovia Bank, N.A.*, No. 3:10-cv-735 (DJS). The allegations in that case—that Detectives unlawfully searched Ms. Koller's safe deposit box in 2004—are wholly distinct from the factual allegations here, and the mere fact that Detectives Hilderbrand and Hoffkins had prior dealings with Ms. Koller is irrelevant to the Court's analysis.

that property was being damaged.   (*See id.* ¶¶ 54–55; Hilderbrand Aff. ¶¶ 21–22.) As with Investigator Gallego, the record is thus insufficient to permit a reasonable juror to conclude that Detective Hilderbrand had an opportunity to intercede. Accordingly, the claims against Detective Hilderbrand are dismissed.

A genuine dispute exists, however, about whether Detectives Hoffkins and Wachnicki had an opportunity to intercede to prevent their fellow police officers from violating the Fourth Amendment. Contrary to Defendants' suggestion that there is no evidence that Hoffkins or Wachnicki "observed or had reason to know that excessive damage was occurring on May 15, 2007" (Defs.' Mem. Supp. at 35), there is minimally sufficient evidence in the record to allow a reasonable juror to conclude that Defendants observed other officers inflicting undue property damage. Detective Hoffkins was the photographer on the scene, stating that "[t]he group of Westchester Police officers went from room to room for the manual search. I stood by, out of the way, waiting until any items were found . . . .  Then I would take photographs . . . ." *(*Hoffkins Aff. [Doc. # 91-8] ¶¶ 3, 6.) Hoffkins's statement permits a reasonable inference that he observed the Westchester officers as they searched the premises. Similarly, Detective Wachnicki was responsible for documenting the items located and identified for seizure by the Westchester officers. (Wachnicki Aff. [Doc. # 91-9] ¶3.) Detective Wachnicki avers that he "was present near but in a location separate from the search team as they went from place to place." (*Id.* ¶ 5.) As a reasonable juror could infer from this that Detective Wachnicki observed the Westchester officers searching. Although Detectives Wachnicki and Hoffkins also filed affidavits averring that they did not observe other officers inflicting unreasonable property damage, they were present throughout, performing their designated roles, and it would therefore be improper for the Court to grant summary

judgment in their favor, given the genuine factual dispute on whether the searching officers were unreasonably destructive or caused only necessary damage.

      C.       Qualified Immunity

A defendant–police officer is entitled to summary judgment on qualified immunity grounds if "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999).

As the Second Circuit noted, "whether a right is 'clearly established' is determined by reference to the case law extant at the time of the violation." *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008). The right to be free from unreasonably destructive searches is clearly established. *See Foreman v. Beckwith*, 260 F. Supp. 2d 500, 505 (D. Conn. 2003) ("The United States Constitution provides individuals with a clearly established right to be free from unreasonable searches and seizures, which includes the right to be from the unreasonable execution of a search warrant."). As a result, in the context of the underlying Fourth Amendment violation, the standard for qualified immunity appears to collapse, at least in part, on the substantive "reasonableness" standard under *Cody*. *See Brown*, 2012 WL 1278014, at *6 (finding that qualified immunity was available based on the same findings that the damage was "neither unreasonable nor indicative of malicious conduct"); *Diaz*, 2006 WL 3833164, at *11 ("[B]ecause questions of fact remain as to the extent of the force used and amount of property destroyed in the search, issues of fact also remain as to whether a reasonable officer would have known that failing to intervene was unlawful in the circumstances.").

Finally, a district court is no longer required to decide whether there was a constitutional violation before reaching the question of whether a defendant is entitled to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that the protocol announced in *Saucier v. Katz*, 533 U.S. 194 (2001), is not "mandatory, but that the two step process is often beneficial").

Detectives Hoffkins and Wachnicki[14] argue that they are entitled to qualified immunity with respect to the §1983 failure-to-intercede claims, because "there is no genuine dispute that . . . there were no circumstances making it objectively unreasonable for [them] to believe that other officers' conduct did not violate the plaintiffs' constitutional rights." (Defs.' Mem. at 21–23.) As discussed above, however, genuine factual disputes prevent the Court from finding as a matter of law that Detectives Hoffkins and Wachnicki did not observe any officer unreasonably damaging Plaintiffs' property. Their qualified immunity claim thus turns on issues of disputed fact, and the Second Circuit has made clear that "[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Thomas*, 165 F.3d at 143; *see also Ochoa*, 2011 WL 3267705, at *8 ("With regard to the unreasonable search claims, the Court has determined that as to the allegations of property destruction the plaintiffs' allegations, if proved, may be sufficient for a fact finder to conclude that the officers' conduct violated clearly established Fourth Amendment law, *Ayeni*, 35 F.3d at 689, and that there are unresolved issues of fact material to a determination of reasonableness as to the search of Ochoa's vehicle."

---

[14] As the Court has concluded that summary judgment is appropriate as to Investigator Gallego and Detective Hilderbrand on the grounds stated above, the Court addresses qualified immunity only with respect to Detectives Hoffkins and Wachnicki, although its analysis would have been largely the same as to all Defendants.

(quotation marks and bracket omitted)).    Since damage to property did occur while Detectives Hoffkins and Wachnicki waited to photograph and inventory items to be seized, facts material to their entitlement to qualified immunity are genuinely in dispute, i.e., was patently unreasonable or malicious damage being inflicted in their presence, *see Thomas*, 165 F.3d at 143.

   D.  Narrowing the Issues Pursuant to Rule 56(g)

  While the Court only grants Defendants' motion in part, it exercises its prerogative under Federal Rule of Civil Procedure 56(g) to narrow the issues for trial. *See* Fed. R. Civ. P. 56(g) ("If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case."). The following facts are not in dispute:

- All of the actions that the police took with respect to the safe in the basement of the Koller's residence were reasonable, and therefore the damage inflicted in the course of gaining access to the safe  was constitutionally permissible, in light of the following: (1) the warrant authorized the search and seizure of "any and all safes and their contents"; (2) Ms. Koller knew how to access the safe; (3) Mr. Koller could have contacted Ms. Koller to provide the police with access to the safe, but chose not to do so; and (4) the police used the services of a professional locksmith. *Cf. Dockery*, 2008 WL 2673307, at *10.

- Detectives Hoffkins and Wachinicki did not manually search the Koller residence, and thus the only viable theory for their liability is that they failed to intercede as other officers caused unreasonable damage during the course of the search.

- Plaintiff cannot assert damage claims regarding any of the vehicles. Even if the Court were to conclude that the Amended Complaint is not limited to claims for property damage to personalty inside the residence, there is not sufficient evidence in the record to allow a reasonable juror to conclude that Detectives Hoffkins and Wachnicki were present while the cars and camper were being searched.

I.    Conclusion

For the reasons stated above, Defendant Gallego's Motion for Summary Judgment [Doc. # 87] is GRANTED, and the Greenwich Defendants' Motion for Summary Judgment [Doc. # 91] is GRANTED as to Detective Hilderbrand and DENIED as to Detectives Hoffkins and Wachnicki.   Pursuant to the Case Management Order [Doc. # 35], the Joint Trial Memorandum is due within thirty days of this order.


IT IS SO ORDERED.


/s/
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 19th day of March, 2013.